**Appeal in Regard to the Revocation of Restaurant Liquor License No. R-19978**

*Michael F. Flannery*, for appellant licensee.
*Thomas F. Kilroe*, for appellee Pa. Liquor Control Board.

SAYLOR, *J.*, January 5, 1983—These are appeals from the opinion and order issued by the Pennsylva-

nia Liquor Control Board (board) in each case in which appellant, a restaurant liquor license holder, was fined for allowing female patrons to buy drink tickets at a reduced price on "Ladies' Night."

As required, we held a de novo hearing. See, 47 P.S. §4-464; also, Com. Liquor Control Board v. M.S.G., Inc., 7 Pa. Commw. 540, 297 A. 2d 556 (1972). By stipulation the testimony before the board's examiner in each case constitutes the record from which we make the following findings:[1]

As to Citation No. 641-1982, No. 289 Misc. Docket 1982:

1. On February 24, 1982, Mary Lou Corbett, an enforcement agent for the board, entered the licensee's premises at approximately 9:30 pm.

2. Upon entry, an employee of the licensee asked if she was there for Ladies Night, and after she responded in the affirmative, he explained the rules of Ladies' Night. He said that all female patrons entering after 9 pm could purchase three tickets for nine cents, which were redeemable for three drinks. Male patrons could not buy the tickets, and only the purchaser could use the tickets.

3. The enforcement agent on this occasion used the tickets for the payment of two vodka sours. The other ticket she retained as evidence.

4. The enforcement agent on this occasion observed 40 to 45 patrons on the premises. She departed at 10:30 pm with 80 to 85 patrons on the premises. During this visit she did not observe any male patron attempting to purchase a ticket.

5. On March 3, 1982, Ann S. Corbin, an enforcement agent for the board, visited the licensed

---

1. In each case the transcribed notes of testimony are marked Exhibit "2."

premises at approximately 9:15 pm. It was Ladies' Night and she purchased three tickets for nine cents.

6. On this occasion Agent Corbin observed male patrons paying cash for drinks while the female patrons used their tickets. She observed one male patron paying $1.75 for his drink, a screwdriver.

7. Agent Corbin saw no male buy or attempt to buy tickets. She purchased two glasses of wine with two of the tickets. She retained the third as evidence. She left at approximately 9:50 pm. There were 30 to 45 patrons on the premises when she arrived, and 40 to 60 when she left.

8. Ladies' Nights are common among licensed establishments in the Reading area. Ladies' Nights involve either a reduction in price to female patrons, or two drinks for the price of one.

9. The licensee was issued a license on September 10, 1976, and there were no prior citations against this establishment.

10. The licensee never received any warning or notification prior to February 24, 1982, that selling drinks to female patrons for less than to males was unlawful.

As to Citation No. 915-1982, No. 288 Misc. Docket 1982:

11. On March 10, 1982, Shirley Humes, an enforcement agent for the board, visited the licensed premises at approximately 10:45 pm. It was Ladies' Night and she purchased three tickets for nine cents. There were approximately 200 patrons on the premises.

12. Agent Humes purchased two rum and coke drinks with the tickets. Later she bought one for cash. It cost her approximately $1.75. She left at approximately 12:15 am on March 11, 1982, leaving approximately 50 patrons remaining.

13. On March 24, 1982, Agent Humes visited the

premises from 10 pm to 11:30 pm. It was Ladies' Night again. She purchased three tickets for nine cents, bought two glasses of Lambrusco red wine with the tickets and before leaving purchased for evidentiary purposes an identical drink, paying $1.50.

14. On this occasion there were 150 patrons upon arrival and approximately 75 patrons when she left.

15. On March 10, 1982, Agent Humes observed a male patron attempting to pay for a drink with a ticket, but he was refused. The barmaid said, "I am sorry, but I cannot take the ticket from a male."

16. On one of these occasions Agent Humes was instructed when she bought tickets that only she could use them and they were usable only that night.

## DISCUSSION

At the outset it is important to note that in these appeals we are not asked to nor do we decide whether the licensee's "Ladies' Night" violates the Pennsylvania Constitution[2] or the Pennsylvania Human Relations Act[3] on the basis of sexual discrimination. Both sides agree that the only question presented is whether the licensee's conduct violated Section 4-493(24) of the Liquor Code, 47 P.S. §4-493(24).

2. Article I, §27 of the Pennsylvania Constitution mandates that, "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

3. 43 P.S. §951 et seq. See also, 1974 Opinion of Atty. Gen. No. 55 on the question of whether the State Liquor Control Board may refuse to issue or renew licenses to, and revoke or suspend licenses of, licensees which discriminate on the basis of race, color, religion, creed, sex, or national origin in their employment policies or in providing facilities, accommodations and services.

That section provides:

It shall be unlawful —

## THINGS OF VALUE
## OFFERED AS INDUCEMENT

(24) For any licensee under the provisions of this article, or the board or any manufacturer, or any employee or agent of a manufacturer, licensee or of the board, to offer to give anything of value or to solicit or receive anything of value as a premium for the return of caps, stoppers, corks, stamps or labels taken from any bottle, case, barrel or package containing liquor or malt or brewed beverage, or to offer or give or solicit or receive anything of value as a premium or present to induce the purchase of liquor or malt or brewed beverage, or for any other purpose whatsoever in connection with the sale of such liquor or malt or brewed beverage, or for any licensee, manufacturer or other person to offer or give to trade or consumer buyers any price, premium, gift or other similar inducement, except advertising novelties of a nominal value which the board shall define: provided, however, that this section shall not apply to the return of any monies specifically deposited for the return of the original containers to the owners thereof.

In each case the board's "findings of fact" are identical, with the exception of dates. These findings read:

The licensee, by its servants, agents or employees, offered and/or gave inducement to certain persons by allowing them privileges not permitted to the general public . . . .

On these findings the board concluded that the above section of the Liquor Code has been violated.

In Noonday Club of Delaware County, Inc. Liquor License Case, 433 Pa. 458, 252 A. 2d 568 (1969),

our Supreme Court clearly set forth the guideline by which we are bound. In that case the court said:

Pursuant to this section [47 P.S. §4-471] the lower court on appeal is required to hold hearings *de novo*, make its own findings of fact and conclusions of law, and then in the exercise of its own discretion either sustain, reverse or modify the action taken by the board. The court is in no way limited either by statute or by case authority to a review of the board's discretion, but rather makes a completely independent determination of all facets of the case in rendering its own decision. The only limitation placed upon the court is in the area of imposing penalties when no material changes are made in the findings of the board. (Citation omitted.)

With this guideline before us, we have carefully reviewed the record and made our findings. From these findings and our review of the law, we conclude that the licensee's Ladies' Night does not violate Section 4-493(24) of the Liquor Code and that the board erred in arriving at a contrary conclusion.

On Ladies' Night nothing was given by the licensee to patrons except a drastic price reduction to females. No one was given any prize or premium or anything else of value to induce them to purchase alcoholic beverages or for any other purpose, nor was any evidence submitted to show that the price reduction in fact induced female patrons to consume alcohol or to consume more than they would normally. While in its broadest sense a price reduction might be viewed as an inducement to purchase alcoholic beverages, such an interpretation of Section 4-493(24) would be overbroad and contrived. It is clear to us from a plain reading of this section that a reduction in the cost of drinks to female

patrons on certain occasions was not within the contemplation of the legislature as prohibited conduct when it was enacted. If such an expansive interpretation was made, any licensee who ever had a "Happy Hour," a "Two for One," "Special of the Week," or any other similar promotion which reduces the price, would be in violation of the Liquor Code. Such a result would be absurd, but would have to follow logically if the board's interpretation is correct.

There appears to be only two reported cases dealing with Section 47 P.S. §4-493(24) and, although neither is directly on point, they are instructive. In Appeal of Elan of Philadelphia, Ltd., 64 Pa. Commw. 230, 439 A. 2d 905 (1982), the lower court's reversal of the board's finding that the licensee violated Section 4-493(24) was affirmed. In Elan, the licensee operated a restaurant and social club. A person wishing to patronize the establishment gained entry in one of two ways. He could either purchase an annual or lifetime membership card or he could pay an entrance fee each time he wished to enter. Members with cards could enter without waiting in line and they were given certain guest and billing privileges. On the other hand, non-members had to wait in line to pay the fee and were admitted on a first-come first-serve basis. The board there, as here, found that the licensee "gave inducements to certain persons by allowing them privileges not permitted the general public." The Commonwealth Court agreed with the lower court's ruling that the admission practice complained of was not contemplated by the legislature as prohibitive conduct, and the board's conclusion to the contrary was illogical.

The second case in Dimitri's, Inc. v. Pennsylvania Liquor Control Board, 60 D. & C. 2d 796 (1973). In

this case, the licensee was fined for giving free lottery tickets with the purchase of certain drinks. During a "Happy Hour" certain brands were sold for a reduced price of $.50. When the Pennsylvania Lottery began, during "Happy Hour" patrons were given the option to buy special brands for $.50 or to pay $1 and receive a free lottery ticket. The board argued that the free lottery ticket with the purchase of certain drinks was a prohibited "inducement" under Section 4-493(24). In rejecting this argument, the court found that the testimony was insufficient to establish that the primary purpose of the offer was to encourage the consumption of liquor. In Dimitri's, unlike this case, something besides a price reduction was given; namely, a free lottery ticket. In addition it is interesting to note that the reduced drink price during a "Happy Hour" was not argued by the board to constitute a violation of the Liquor Code.

For all these reasons and based on our findings, we conclude that the licensee's conduct did not violate Section 4-493(24) of the Liquor Code, and accordingly enter the following

### ORDER

January 5, 1983, the appeals are sustained and the orders of the Pennsylvania Liquor Control Board are reversed and the penalties imposed vacated.